GILBERT *Pl'ff. in equity vs.* MERRILL.

A., being the owner of a farm, mortgaged it to B., and afterward, conveyed the right to redeem to C., who paid B's debt and took an assignment of the mortgage to himself. — In the meantime, however, D., a creditor of A., had attached the right in equity, and on obtaining execution, caused it to be sold. — E., having also an execution against A., placed it in the hands of the officer making the sale, and bid a sum for the equity, large enough to cover both executions. He then paid the first, and caused his own to be returned satisfied. Within the year given by law to redeem, C., tendered to E., the amount he had *actually paid, viz :* the first execution and charges — and thereupon the Court held, in a bill in equity brought by E., to redeem, that the tender made by C., was sufficient to discharge all E's interest in the right in equity, and so he could take nothing by his bill.

C., paid for the right in equity, $1085 ; and at the same time gave a bond to A., in the penal sum of $2000, conditioned to reconvey on payment of $1085, within four years — there being also an understanding, that if A. should not redeem the right in equity, C., should pay him a sum sufficient to make up the $2000. — E., a creditor of A., attempted to impugn the sale on the ground of fraud. But the Court held that, under the circumstances it was not fraudulent; it appearing that A., had assigned C's bond to E., as security for his debt long before the expiration of the four years, but that he did not avail himself of his right to redeem, on the ground, as it appeared further in his answer to a cross bill of E., that the right in equity was really worth *no more than the* $1085.

THIS *Bill in equity* was brought by the plaintiff as owner of a right in equity, by a purchase at a sheriff's sale, to redeem the premises, a farm in *Falmouth,* in this County, from a mortgage originally made to one *Royal Lincoln,* and subsequently assigned to the defendant.

The bill set forth a conveyance by *Samuel Merrill* the original owner, by deed of mortgage, dated *February* 18, 1826, to *Royal Lincoln,* to secure the payment of $343,94 in twelve months, with interest. — An attachment of said *Samuel Merrill's* right in equity, *February* 16, 1827, in a suit brought by one *David Winslow* — the recovery of judgment by *Winslow,* and a

sale of the equity, *November* 14, 1829, on an execution issuing thereon, by *David Wescott*, a deputy sheriff, to *Gilbert*, the plaintiff, for the sum of $534 — and a tender of $453 to the defendant, *January* 15, 1831.

It further set forth a conveyance of the premises by *Samuel Merrill*, to the defendant, *June* 20, 1827, for the consideration of $1085. — An assignment of the mortgage aforesaid by *Lincoln* to *Isaac Sturdivant* — and an assignment of the same by *Sturdivant* to the defendant.

Most of these facts were not controverted by the answer. By which, and the answer of *Gilbert*, to a cross bill filed by *William Merrill, Jr.*, and other evidence in the case however, it appeared, that *Winslow's* execution was for $72,16, and that the whole amount paid by *Gilbert*, on the purchase of the equity, was only $84,21 — and that the remainder of the nominal consideration of $534, was endorsed by the officer on an execution against *Samuel Merrill*, in favor of *Gilbert*, which he had placed in the officer's hands for that purpose.

Before the expiration of a year from the sale, the defendant tendered to *Gilbert*, the plaintiff, the sum of $90 — which covered the amount actually paid by *Gilbert*, with interest and charges ; but he refused to receive it.

It appeared that *Gilbert* and *Wescott*, the officer, both had notice, prior to the sale on execution, of the conveyance from *Samuel Merrill*, to the defendant.

At the time of this latter conveyance, the defendant gave to *Samuel Merrill*, " a bond in the penal sum of two thousand dollars, conditioned for the reconveyance upon the payment of the sum of $1085, in four years, together with all demands, expenses, repairs and interest which he the said *William Merrill, Jr.*, might be required to pay on account of the premises. — And *Samuel* testified that, in case he did not redeem the right in equity, he considered the bargain to be, that *William* was to pay him a sum sufficient to make up the sum of $2000.

This bond, *Samuel Merrill* assigned to *Gilbert*, the plaintiff, as collateral security for his debt, *December* 1, 1828. But *Gilbert* did not avail himself of it, admitting that the $1085 was the full value of the right to redeem the *Lincoln* mortgage.

*Fessenden and Deblois,* counsel for *Gilbert,* insisted that the case shew a *secret trust* in favor of *Samuel Merrill,* which rendered the sale from him to *William,* fraudulent and void.

They also contended that the right in equity was *an entirety* — that the officer was obliged to sell the whole — and that having sold it, pursuing in all respects the course prescribed by law, he well might appropriate *the* excess *to* the payment of other executions in his hands against the debtor.

But if the officer had no such right to appropriate the excess, then *William Merrill, Jr.,* has *a plain and adequate remedy at law* against him, and should pursue that remedy, rather than seek to obtain it of *Gilbert,* in a court of equity.

*Daveis,* for the defendant, made an elaborate argument, citing the following authorities : *Fay v. Valentine,* 12 *Pick.* 40 ; 1 *Schoale and Lefroy's Rep.* 149 ; *Newland, on Con.* 504 ; *Jennings v. Moor,* 2 *Vernon,* 609 ; 1 *Atkins,* 520 ; *Smithson v. Thompson* ; 1 *Maddox Chan.* 525 ; *Jeremy's Eq.* 188 ; *Baker v. Harris,* 16 *Vesey,* 397 ; 2 *Fonblanque,* 272 ; 5 *Wheaton,* 284 ; 4 *Kent's Com.* 87, 177, 179 ; *Lawrence v. Tucker,* 7 *Greenl.* 195 ; *Blaney v. Bearce,* 2 *Greenl.* 132 ; *Wilson v. Wilson,* 1 *Cranch,* 100 ; 1 *Chit. Pr.* 470 ; 7 *Johns. Chan. Rep.* 65 ; 1 *Maddox Ch.* 524, 525 ; *Wade v. Mervin,* 11 *Pick.* 280 ; *Dunlap v. Stetson,* 4 *Mason,* 349 ; *Williams v. Gray,* 3 *Greenl.* 207 ; *Train v. Marsh,* 4 *Pick.* 131 ; *Lapish v. Wells,* 6 *Greenl.* 175 ; *Thompson v. Chandler,* 7 *Greenl.* 381.

The opinion of the Court, at a subsequent term, was delivered by

PARRIS J.—By the deed of *Samuel Merrill* to *William Merrill, Jr.* of the 20*th* of *June,* 1827, the latter became entitled to all the rights of *Samuel Merrill,* as mortgagor, subject only to the lien created by the prior attachment on *Winslow's* writ.

By the conveyance from *Lincoln* to *Sturdivant,* and *Sturdivant* to *William Merrill, Jr.,* the latter became entitled to all the rights of mortgagee in the same premises, so that if there had been no attachment of the equity of redemption, prior to the conveyance from *Samuel* to *William,* the latter would, by virtue of both conveyances, have acquired an indefeasible title to the whole estate.

*Winslow's* suit having been prosecuted to judgment, the right in equity of *Samuel Merrill,* which had been attached on the writ, on the 16*th* of *February,* 1827, was seised on the execution and duly sold to *Gilbert,* for $534 ; — the amount of the execution, on which the sale was made, being only $72,16. This sale, having relation back to the time of the attachment, rode over the conveyance from *Samuel* to *William ;* and *Gilbert,* being the purchaser of the equity, acquired a defeasible right to redeem the premises, by paying up the *Lincoln* mortgage, then held by *William Merrill,* there being no other incumbrance upon the premises at the time of the attachment on *Winslow's* writ ; — from which time *Gilbert's* title takes effect.

But this right in *Gilbert,* to redeem the original mortgage, was liable to be defeated, by payment to him, by the mortgagor, of the sum actually paid for such right in equity, with the interest thereof, at any time within one year next after the time of executing the deed thereof.

We have heretofore decided, in this case, that the purchaser may hold his purchase for the whole sum by him paid, although that sum may exceed the amount of the judgment to satisfy which the equity is sold.  8 *Greenl.* 295.  We, thereupon, held that the tender of $90, by *William Merrill, Jr.,* on the 10*th* of *July,* 1830, although made within one year from the time of the sale to *Gilbert,* and although more than sufficient to satisfy *Winslow's* execution and all charges arising thereon, did not relieve the equity from *Gilbert's* claim under the sheriff's sale, as it *then* appeared that *Gilbert* had actually paid therefor the sum of $534.

The case, however, *now* comes before us under a very different state of facts.  From *Gilbert's* answer to the cross bill, filed in this case, and from the testimony of *Wescott,* who made the sale, it appears that *Gilbert* had also an execution against *Samuel Merrill,* the judgment debtor, whose right in equity was sold, and that for the purpose of causing the surplus money arising from the sale of the equity after paying the *Winslow* execution, to be applied towards the payment of *Gilbert's* execution, he placed that in the hands of *Wescott,* the officer, and that the whole amount paid by *Gilbert* was $84,21, which was to satisfy

the *Winslow* execution, and that the residue of the $534 was endorsed on *Gilbert's* execution, by *Wescott*, and receipted for to *Wescott*, by *Gilbert*, no money having been paid or received by either party. This would have been a very proper course provided *Samuel Merrill* had still continued to be the owner of the right in equity. The surplus would, in such case, have been his property, to be paid over to him, or applied towards the payment of his debts. But by his deed to *William Merrill, Jr.*, of the 20*th* of *June*, 1827, he conveyed all his interest in the premises, and the said *William* thereby became the owner of the right in equity, subject to *Winslow's* attachment. Of this conveyance *Gilbert* had notice long previous to the sale, as he took from *Samuel Merrill* an assignment of a bond of which this deed was the principal subject matter, and he expressly admits notice in his answer to the cross bill. *Wescott*, the officer, also had notice of *William Merrill's* interest, as he saw the deed on record previous to advertising the sale of the right in equity. They both knew that the surplus money, arising from the sale, if any there should be after satisfying *Winslow's* execution, was the property of *William Merrill, Jr.*, and that any appropriation of it for the payment of *Samuel Merrill's* debts, would, at least, be inequitable. *Gilbert* says, in his answer, that he relied upon the knowledge of *Wescott*, and that he was glad, in this manner, to recover his just and lawful debt due from *Samuel Merrill*, if the mode was lawful and right.

There is no necessity for imputing intentional fraud, in this case, to either *Wescott* or *Gilbert*. They undoubtedly mistook the law of the case. The equity was too apparent to be misunderstood by any one. It would have comported as well with equity, and perhaps we might say as well with law, if the money of an entire stranger to these transactions had been appropriated to pay *Samuel Merrill's* debt to *Gilbert*, as the money arising on the sale of this right in equity to redeem the *Lincoln* mortgage. That being the money of *William Merrill, Jr.* and traced into the hands of *Gilbert*, by his own procurement, and direction to *Wescott*, the officer, we think it is to be considered as so much money held by *Gilbert*, for *William Merrill's* use, and being so in *Gilbert's* hands, it was unnecessary for *William* to include this

sum in the tender ; — that it could not be required that a tender should be made to *Gilbert*, of what he had already in possession and claimed to hold.

In this view of the case, as the amount actually tendered exceeded the *Winslow* execution and all charges arising thereon, and as the tender was made by the assignee of the mortgagor, who owned the whole estate, subject only to the incumbrance created by this sale, we think it was sufficient to discharge that incumbrance, and that *Gilbert* had no equitable claim upon *William Merrill, Jr.* for the amount endorsed on the execution against *Samuel Merrill*.

This will place *Gilbert* in the enjoyment of all his legal rights. It refunds the money which he actually paid for the right in equity, with interest ; it leaves him to seek his remedy against *Samuel Merrill*, but not to appropriate the property of others to pay said *Samuel's* debts ; it leaves *William Merrill, Jr.* in the enjoyment of his property, to which by law as well as equity he is entitled, provided the purchase was not infected with fraud.

But it is further contended, that in the transaction between *William* and *Samuel*, there was a secret trust or reservation for the benefit of *Samuel*, which renders the conveyance fraudulent and void as against his creditors, and that *William* is, therefore, precluded from any benefit arising under it. The only evidence relied upon to support this position is the testimony of *Samuel Merrill*, from which it appears that when he made the conveyance to *William Merrill*, of the 20*th* of *June*, 1827, by which the right in equity passed, a bond was given back by *William* in the penal sum of two thousand dollars, conditioned for a reconveyance upon the payment of $1085, together with all demands, expenses, repairs and interest which *William* might be required to pay on account of the premises, and *Samuel* testifies that, in case he did not redeem the right in equity, he understood the bargain to be that, *William* was to pay him a sum sufficient to make up the sum of two thousand dollars. This, of itself unexplained, might, under certain circumstances, be evidence of fraud. But from the answer of *Gilbert* himself, and other evidence in the case, the appearance of fraud wholly vanishes. This bond, which gave *Samuel* the right to redeem upon payment of $1085,

in four years from the date of the deed, was assigned to *Gilbert,* as collateral security for his debt, more than two years previous to its expiration, whereby *Gilbert* was fully authorised to redeem the right in equity, upon the payment to *William Merrill* of the sum of $1085 only — or if by reason of the bond being of different date from the deed, he could not compel a reconveyance, he would, in case of refusal by *William* to convey, recover the damages arising from such refusal, which would be the difference between the value of the right to redeem from *William,* and the sum stipulated to be paid. If this right was, in fact, worth $2000, or any sum exceeding the $1085, then *Gilbert* had the benefit of it, and might have realized it, and there could have been no fraud practised upon him, as a creditor of *Samuel Merrill.* If, on the other hand, as *Gilbert* himself says was the fact, this right was not worth any thing, that the $1085 was the full value of the right to redeem the *Lincoln* mortgage, then *Samuel* had received of *William* a fair consideration for the property conveyed, and no creditor of *Samuel* has reason to complain.

Under this view of the evidence, we think the case is not infected with fraud.

The obligation in the answer to the original bill that *Sturdivant* entered to foreclose the *Lincoln* mortgage, is wholly unsupported by evidence.

The result of our examination is this; the right in equity which *Samuel Merrill* had to redeem the *Lincoln* mortgage, was legally conveyed to *William Merrill, Jr.,* subject to the attachment made in favor of *Winslow.* — *Gilbert,* as the purchaser of the right in equity, actually paid nothing more than the amount of the *Winslow* execution and charges of sale, being $84,21. — The tender by *William Merrill, Jr.* to *Gilbert,* on the 10*th* of *July,* 1835, of $90 was valid and sufficient to discharge all *Gilbert's* interest in the right in equity under the sale on *Winslow's* execution, and, consequently, that *Gilbert's* tender to *William Merrill, Jr.* of $453 on the 21*st* of *January,* 1831, was wholly invalid, as he had not, at that time, any legal right to the premises or any interest therein.

But, it is contended, that if *Wescott* ought not to have appro-

priated the surplus to the payment of *Gilbert's* execution against *Samuel Merrill*, and if, in fact, the said surplus belonged to the defendant, still he is not entitled to relief in the manner prayed for, inasmuch as he has a plain, adequate and sufficient remedy, at law, against *Wescott.* If *Wescott* had actually received the money, it might be recovered in the manner suggested by the plaintiff. But the case shews, as well from *Wescott's* testimony as *Gilbert's* answer, that no money was actually paid beyond what was necessary to discharge *Winslow's* execution.

It is, moreover, to be kept in view that, *Gilbert* is the moving party in this case ; that he claims the right (through the purchase of the right in equity sold by *Wescott* on *Winslow's* execution,) to redeem the *Lincoln* mortgage held by *William Merrill*, and unless he can avail himself of this right, his bill is wholly unsupported.

We are clearly of opinion, for the reasons before given, that proof of the tender by *William Merrill*, on the 10*th* of *July*, 1830, is a perfect answer to any claim by *Gilbert*, arising from his purchase at the sale by *Wescott*, on the 18*th* of *December*, 1829, and that since said tender, his rights, acquired under that sale, have been completely barred.